FILED by GMC D.C.

SEP 0 9 2009

STEVEN M. LARIMORE
CLERK U. S. DIST. CT.
S. D. of FLA. – MIAMI

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

ICE PORTAL, INC.,                  )
                                   )
            Plaintiff,             )
                                   )
v.                                 )
                                   )
VFM LEONARDO, INC.,                )
                                   )
            Defendant.             )
_____)

# 09-61424

CASE NO. 09-_____

## CIV-ZLOCH

## COMPLAINT                  /ROSENBAUM

### INTRODUCTION

1. This action arises as a result of Defendant VFM Leonardo, Inc.'s ("VFML's") active participation in a series of unlawful and anticompetitive agreements designed to first monopolize and then control pricing within the markets for management and distribution of digital photographs and enhanced video content (known as "rich" content) to online travel agents. Both Plaintiff ICE Portal, Inc. ("ICE Portal") and VFML produce, manage, and distribute digital photographs and rich content to online travel agents for, *inter alia*, hotels and hotel groups. As detailed in the succeeding paragraphs, VFML's agreements have unlawfully reduced and restrained competition in the markets for management and distribution of digital photographs and rich content to online travel agents. As a result of these agreements, competitive distributors of digital photographs and rich content to online travel agents, including ICE Portal, have incurred and face an ongoing threat of loss or damage to their businesses. ICE Portal requests monetary damages to compensate for the losses to business and property that it has incurred, and injunctive relief to prevent the continuation of this anticompetitive and illegal situation.

2. At all times relevant to the claims asserted in this Complaint, VFML has held market power in three separate product markets:

   a.     The market for development of a digital asset management ("DAM") platform to process and manage digital photographs and rich content (the "Technology Platform Market");

1

b.    The market for management and distribution of digital photographs to online travel agents (the "Photo Distribution Market"); and

c.    The market for management and distribution of rich content to online travel agents (the "Rich Content Distribution Market").

3.  Beginning as early as 2005, VFML made a strategic decision to utilize its market power in each of these three markets to drive out competition and monopolize and control pricing within both the Photo Distribution Market and the Rich Content Distribution Market. VFML's monopolization strategy has thus far proceeded as follows:

a.    VFML has concluded exclusive dealing arrangements with a significant portion of the online travel industry, thereby restraining competition and weakening its rivals within the Photo Distribution Market and the Rich Content Distribution Market;

b.    VFML has acquired its only significant rival in the Photo Distribution Market, Leonardo Media Services, B.V. ("Leonardo"), thereby creating a monopoly in that market;

c.    VFML has concluded exclusive dealing arrangements (by means of an illegal tying) with three of four Global Distribution Systems, thereby further restraining competition and weakening its only remaining rival in the Rich Content Distribution Market, ICE Portal; and

d.    VFML has utilized its monopoly power in the Photo Distribution Market to conclude exclusive dealing arrangements (by means of an illegal tying) with hotels and hotel groups, thereby finally foreclosing competition in the Rich Content Distribution Market and putting ICE Portal out of business.

4.  VFML's competition elimination strategy has been largely successful to date.  As a result of VFML's anticompetitive practices, VFML has acquired its only significant rival in the Photo Distribution Market.  Moreover, ICE Portal, VFML's only significant competitor in the Rich Content Distribution Market has been deprived of relationships essential to the management and distribution of digital photographs and rich content.

5.  If VFML's monopolistic practices are not immediately terminated, competition and the possibility of competition will be entirely precluded from the relevant markets.  VFML is

already in a position to exercise its monopoly power by controlling pricing in the relevant markets to the detriment of the hotel and travel industry and, ultimately, consumers.

## THE PARTIES

6.  Plaintiff ICE Portal is a Florida corporation with its principal place of business at 3595 Sheridan Avenue, Suite 200, Hollywood, Florida 33021. Since its inception as World Travelvision, Inc., in 1998 (rebranding as ICE Portal in 2003), ICE Portal has been a leading provider of production, management, and distribution services for digital photographs and rich content for, inter alia, hotels and hotel groups.

7.  Defendant VFML is a Canadian corporation with its principal place of business at 111 Peter Street, Suite 530, Toronto, Canada M5V2H1. In November 2008, VFML was formed by the acquisition of Leonardo Media, B.V. ("Leonardo"), a Dutch corporation, by VFM Interactive, Inc. ("VFM Interactive"). Founded in 2000, VFM Interactive has been engaged in the production, management, and distribution of rich content since as early as 2000.

## JURISDICTION AND VENUE

8.  This Court has original federal question jurisdiction over this action under Article III, Section 2 of the United States Constitution and 28 U.S.C. §1331.

9.  This Court has exclusive jurisdiction over this action under Section 4 of the Sherman Act, 15 U.S.C. §4.

10. This Court has supplemental jurisdiction over substantially-related state law claims under 28 U.S.C. §1367.

11. VFML conducts business in this district. Venue is therefore proper under 28 U.S.C. §1391 and 15 U.S.C. §§15 and 22.

## RELEVANT MARKETS

12. The Technology Platform Market is a relevant product market for purposes of this action.

13. Prior to November 2008, firms engaged in the development of technology platforms for the hosting, management, and distribution of digital photographs and rich content to online travel agents included VFM Interactive, Leonardo, and ICE Portal. After November 2008, firms engaged in the development of technology platforms for the hosting, management, and distribution of digital photographs and rich content to online travel agents include only VFML and ICE Portal.

3

14. The Photo Distribution Market is a relevant product market for purposes of this action.

15. Prior to November 2008, firms engaged in the hosting and distribution of digital photographs to online travel agents included VFM Interactive and Leonardo. After November 2008, firms engaged in the hosting and distribution of digital photographs to online travel agents include VFML and (to a much lesser extent) ICE Portal.

16. The Rich Content Distribution Market is a relevant product market for purposes of this action.

17. Firms engaged in the hosting, management, and distribution of rich content to online travel agents include VFML and ICE Portal.

18. The relevant geographic market applicable to each of the relevant product markets in this action is the world.

## HISTORY OF THE ONLINE TRAVEL INDUSTRY

19. There have long been intermediaries to help market and sell travel. The traditional intermediary is, of course, the travel agent. In the 1990's, as a result of the advent of the Internet, the consumers shifted away from brick-and-mortar travel agencies toward online travel agents, including, inter alia, Travelocity, Orbitz, and Expedia.

20. Beginning in the 1970s, brick-and-mortar travel agencies used Global Distribution Systems (GDS's) to facilitate airline, hotel, and car rental bookings. Each GDS was designed to deliver instant and reliable information on airline seats, hotel rooms, and car rentals with respect to availability and applicable rates. The vast majority of travel agencies were, and still are, connected electronically to at least one GDS.

21. A given hotel's room rates and availability are usually managed by the hotelier and stored in a property management system (PMS) that communicates with a central reservation system (CRS) that then delivers data to one or more GDS's. The GDS's, in turn, provide traditional travel agencies and online travel sites with information on the hotel's rates and availability. Historically, the GDS technology did not provide any visual content, such as digital photographs or rich content.

22. In 1989, an electronic distribution switch, known as Pegasus, was launched by The Hotel Industry Switch Company (THISCO). Pegasus was designed to link a given hotel's CRS

to the then seven existing GDS's. The company later changed its name to Pegasus Solutions, Inc. ("Pegasus"), and now connects more than 86,000 hotels to the four currently existing GDS's and, from there, to hundreds of online travel agents.

23. In the 1990's, the GDS's focused their attention on updating old technology to feed hotel information on rates and availability to the newly formed online travel agents. The GDS's soon realized that visual content was necessary to entice consumers and decided to update their respective feeds to include digital photographs. Thus, the Photo Distribution Market was born.

24. In 1996, Leonardo was founded, to help collect, manage, and distribute digital photographs for each of the four GDS's (Amadeus, Galileo, Sabre, and Worldspan). Leonardo was paid by each GDS for management and distribution of digital photographs, and by hoteliers and hotel groups that were interested in a more comprehensive digital asset management solution. By means of the latter, the Technology Platform Market was born.

25. Then, early in this decade, ICE Portal and VFM Interactive separately developed competing technologies to help hoteliers distribute rich content to the online travel agencies. Hoteliers were and are unable to individually provide rich media to travel sites for several reasons, including the lack of industry standards for displaying rich media. Meanwhile, online travel agents do not have the necessary resources to collect, format, size, and integrate rich media from literally thousands of individual sources. Wherefore, until recently online travel agents relied on the GDS's and Pegasus for hotel information, on either Leonardo or VFM Interactive for photo distribution, and on either ICE Portal or VFM Interactive for rich content distribution. Robust competition between VFM Interactive and Leonardo in the Photo Distribution Market and between VFM Interactive and ICE Portal in the Rich Content Distribution Market, kept prices at competitive levels.

26. While initially begun as a rich content production, management, and distribution company in competition with ICE Portal, in the summer of 2005, VFM Interactive also began to compete with Leonardo in the production, management, and distribution of digital photographs. Over the next several years, VFM Interactive progressively gained market share in the Photo Distribution Market.

27. On November 4, 2008, VFM Interactive acquired substantially all of the assets of Leonardo, thus eliminating a significant competitor in the Technology Platform Market and all

significant competition in the Photo Distribution Market. Having accomplished monopolization of the Photo Distribution Market, VFML has proceeded to move to monopolize the Rich Content Distribution Market by means of a series of exclusive dealing and illegal tying arrangements more specifically described below.

28. At present, VFML has pursued and executed exclusive dealing and illegal tying arrangements with three of the four GDS's and Pegasus, whereby VFML provides the DAM technology platform to manage and distribute photos and rich content, in exchange for an agreement to accept distribution of digital photographs and rich content only from VFML. By these anticompetitive tactics, VFML seeks to eliminate ICE Portal, its only remaining competition, from the Technology Platform Market and the Rich Content Distribution Market.

29. The increased distribution costs of VFML's anticompetitive strategy will be paid by hotels and hotel groups and ultimately, through increased hotel rates, by the traveling consumer.

## VFML'S ANTICOMPETITIVE STRATEGY AND TACTICS

30. Throughout the relevant time period, VFM Interactive (and its successor VFML) held and continues to hold significant market power in the Technology Platform Market.

31. In or about October 2006, VFM Interactive proposed to provide a DAM platform for Sabre Holdings Group, owner of the Travelocity brand ("Sabre/Travelocity"), in exchange for an exclusive dealing arrangement with respect to distribution of digital photographs and rich content through Sabre/Travelocity by VFM Interactive.

32. In or about October 2007, VFM Interactive executed an exclusive dealing agreement with Sabre/Travelocity, by which Sabre/Travelocity agreed to accept distribution of digital photographs and rich content exclusively from VFM Interactive.

33. On or about October 31, 2007, as a direct result of its exclusive dealing arrangement with VFM Interactive, Sabre/Travelocity terminated its relationship with ICE Portal, allowing ICE Portal to continue distribution of digital photographs and rich content to Sabre/Travelocity for existing accounts only through October 31, 2008.

34. In 2007, VFM Interactive proposed to provide a DAM platform for Travelport Limited ("Travelport"), owner of various online travel agents and two of the four GDS's

(Worldspan and Galileo), in exchange for an exclusive dealing arrangement with respect to distribution of digital photographs and rich content through Travelport by VFM Interactive.

35. On or about October 1, 2007, VFM Interactive executed an exclusive dealing agreement with Travelport, by which Travelport agreed to accept distribution of digital photographs and rich content exclusively from VFM Interactive.

36. In or about February 2009, as a direct result of its exclusive dealing arrangement with VFML, Travelport refused to accept digital photographs and rich content from ICE Portal.

37. Throughout the relevant time period, VFM Interactive (and its successor VFML) has held significant market power in the Photo Distribution Market.

38. On or about November 4, 2008, VFM Interactive acquired Leonardo, VFM Interactive's only significant competitor in the Photo Distribution Market.  By means of the acquisition, VFML obtained monopoly power in the Photo Distribution Market.

39. On information and belief, VFM Interactive's acquisition of Leonardo was exempt from review for potential anticompetitive effects by the United States Department of Justice under the Hart-Scott-Rodino Act, 15 U.S.C. § 18a, *et seq.*

40. Since VFM Interactive's acquisition of Leonardo, ICE Portal has attempted to compete with VFML in the Photo Distribution Market.

41. ICE Portal has encountered significant barriers to entry into the Photo Distribution Market including, *inter alia*, the various exclusive dealing and illegal tying arrangements described herein.

42. Throughout the relevant time period, VFM Interactive (and its successor) VFML has held significant market power in the Rich Content Distribution Market.

43. In or about December 2008, VFML proposed to provide a DAM platform for Pegasus, in exchange for an exclusive dealing arrangement with respect to distribution of digital photographs and rich content through Pegasus by VFML.

44. On or about June 24, 2009, VFML proposed and executed an exclusive dealing agreement with Pegasus, by which Pegasus agreed to accept distribution of digital photographs and rich content exclusively from VFML.

45. On or about June 30, 2009, as a direct result of its exclusive dealing arrangement with VFML, Pegasus terminated its three-year, non-exclusive partnership with ICE Portal.

46. In or about April 2009, VFML proposed to provide a DAM platform for Amadeus Group, S.A. ("Amadeus"), in exchange for an exclusive dealing arrangement with respect to distribution of digital photographs and rich content through Amadeus by VFML.

47. On information and belief, as of the date of filing, VFML's exclusive dealing arrangement with Amadeus is still under negotiation between the parties.

48. On information and belief, in or about 2005, VFML entered into an exclusive dealing arrangement with respect to distribution of rich content through TripAdvisor, LLC ("TripAdvisor") by VFML.

49. In or about December 2006, as a direct result of its exclusive dealing arrangement with VFML, TripAdvisor terminated its relationship with ICE Portal.

50. In or about January 2009, VFML proposed and executed an exclusive dealing agreement with Intercontinental Hotels Group ("IHG"), by which IHG agreed to use VFML as its exclusive distributor of digital photographs and rich content.

51. In or about January 2009, as a direct result of its exclusive dealing arrangement with VFML, IHG terminated all direct relations with ICE Portal. ICE Portal continues to provide indirect services to IHG resulting from ICE Portal's former partnership with Leonardo, for which it has never received a request for termination from IHG.

52. On information and belief, VFML continues to propose and execute exclusive dealing agreements with a variety of hotels and hotel chains by which, in order to distribute digital photographs, each hotel or hotel chain must agree to use VFML as its exclusive distributor of rich content.

## COUNT I
### Violation of Section 2 of the Sherman Antitrust Act
### (Monopolization of the Photo Distribution Market)

53. ICE Portal incorporates paragraphs 1 through 52 as though set forth fully herein.

54. By means of its acquisition of Leonardo, VFML has monopolized the Photo Distribution Market.

8

55. Such conduct constitutes monopolization in violation of Section 2 of the Sherman Act, 15 U.S.C. § 2.

56. Unless restrained by Order of this Court, VFML's monopolization of the Photo Distribution Market will continue to produce the following anticompetitive effects, among others:

      a.    Unreasonable restraints on and elimination of competition, including ICE Portal, in the Photo Distribution Market;

      b.    Use of monopoly power in the Photo Distribution Market to eliminate competition and control prices in related markets, especially the Rich Content Distribution Market;

      c.    The creation of significant and insurmountable barriers to entry, thus ensuring continued unlawful maintenance of VFML's monopoly of the Photo Distribution Market and the attendant power to control prices and eliminate competition; and

      d.    The retardation of innovation and development of new technologies within the Photo Distribution Market.

57. As a direct and proximate result of the monopolization of the Photo Distribution Market by VFML, ICE Portal is being and will continue to be immediately and irreparably injured by and through the following:

      a.    The loss of profits that would otherwise have been earned from the distribution of digital photographs to online travel agents;

      b.    The loss of market share that would otherwise have been achieved by ICE Portal in a freely-competitive market;

      c.    The substantial reduction in the value of ICE Portal's business and assets; and

      d.    The loss of good will in ICE Portal as a going concern.

58. As a direct and proximate result of VFML's monopolization of the Photo Distribution Market, ICE Portal has been injured in business and property in an amount to be determined at trial.

59. As a direct and proximate result of the monopolization of the Photo Distribution Market by VFML, ICE Portal has suffered and is threatened with loss or damage to business and property for which monetary compensation alone is not an adequate remedy.

60. As a direct and proximate result of the monopolization of the Photo Distribution Market by VFML, consumers have been deprived of the full benefits of competition in the Photo Distribution Market.

**COUNT II**
**Violation of Section 1 of the Sherman Antitrust Act**
**(Exclusive Dealing Agreements with Online Travel Agents)**

61. Plaintiff incorporates paragraphs 1 through 60 as though set forth fully herein.

62. VFML has coerced (by means of an illegal tying arrangement) online travel agents to enter into long-term exclusive dealing arrangements for the distribution of digital photographs and rich content by and from VFML. Such exclusive dealing agreements include agreements between VFML on the one hand and Sabre/Travelocity, Travelport, and TripAdvisor, on the other.

63. These exclusive dealing arrangements have had the purpose, effect, tendency and capacity to, among other things, effectively foreclose significant and essential channels of distribution that are necessary to permit free and fair competition by ICE Portal and others in the Photo Distribution Market and the Rich Content Distribution Market. Hotels that wish to distribute digital photographs or rich content through ICE Portal to Sabre/Travelocity, Travelport, and/or TripAdvisor are precluded from doing so by VFML's exclusive dealing arrangements with those entities.

64. The actual and probable effect of VFML's exclusive dealing arrangements has been to raise prices above the competitive level and substantially lessen competition in the Photo Distribution Market and the Rich Content Distribution Market. VFML possesses monopoly power in both markets and has used, and, continues to use, exclusive dealing arrangements to raise barriers to entry and foreclose actual and potential competition.

65. There is no legitimate business justification for VFML's exclusive dealing arrangements.

66. VFML's exclusive dealing arrangements constitute contracts in restraint of trade in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1.

67. As a direct and proximate result of VFML's contracts in restraint of trade, ICE Portal has been injured in business and property in an amount to be determined at trial.

68. As a direct and proximate result of VFML's contracts in restraint of trade, ICE Portal has suffered and is threatened with loss or damage to business and property for which monetary compensation alone is not an adequate remedy.

69. As a direct and proximate result of this VFML's contracts in restraint of trade, consumers have been deprived of the full benefits of competition in the relevant markets.

### COUNT III
### Violation of Section 1 of the Sherman Antitrust Act
### (Exclusive Dealing Agreements with Global Distribution Systems)

70. ICE Portal incorporates paragraphs 1 through 69 as though set forth fully herein.

71. VFML has coerced (by means of an illegal tying arrangement) three of the four GDS's, including Sabre/Travelocity and Travelport (Worldspan and Galileo), as well as Pegasus, to enter into long-term exclusive dealing arrangements for the distribution of digital photographs and rich content by and from VFML.

72. These exclusive dealing arrangements have had the purpose, effect, tendency and capacity to, among other things, effectively foreclose significant and essential channels of distribution that are necessary to permit free and fair competition by ICE Portal and others in the Photo Distribution Market and the Rich Content Distribution Market. Hotels that wish to distribute digital photographs or rich content through ICE Portal to Sabre/Travelocity, Travelport (Worldspan and Galileo), and/or Pegasus, are precluded from doing so by VFML's exclusive dealing arrangements with those entities.

73. The actual and probable effect of VFML's exclusive dealing arrangements has been to raise prices above the competitive level and substantially lessen competition in the Photo Distribution Market and the Rich Content Distribution Market. VFML possesses monopoly power in both markets and has used, and, continues to use, exclusive dealing arrangements to raise barriers to entry and foreclose actual and potential competition.

74. There is no legitimate business justification for VFML's exclusive dealing arrangements.

75. VFML's exclusive dealing arrangements constitute contracts in restraint of trade in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1.

76. As a direct and proximate result of VFML's contracts in restraint of trade, ICE Portal has been injured in business and property in an amount to be determined at trial.

77. As a direct and proximate result of VFML's contracts in restraint of trade, ICE Portal has suffered and is threatened with loss or damage to business and property for which monetary compensation alone is not an adequate remedy.

78. As a direct and proximate result of this VFML's contracts in restraint of trade, consumers have been deprived of the full benefits of competition in the relevant markets.

**COUNT IV**
**Violation of Section 1 of the Sherman Antitrust Act**
**(Illegal Tying Arrangements with Global Distribution Systems)**

79. ICE Portal incorporates paragraphs 1 through 78 as though set forth fully herein.

80. VFML has coerced GDS's, including Sabre/Travelocity and Travelport (Worldspan and Galileo), as well as Pegasus, to enter into unreasonable and anticompetitive tying arrangements in the form of technology development and distribution agreements.

81. Specifically, VFML conditioned DAM technology development for each GDS (the tying product) on their acceptance of VFML's exclusive right to the distribution of digital photographs and rich content for hotels and hotel groups (the tied product).

82. The practical effect of VFML's illegal tying arrangements with the GDS's is that competitors of VFML are foreclosed from distributing digital photographs and rich content to online travel agents through the GDS's, whose network of affiliates (some of which are exclusive) represent a substantial portion of the online travel industry.

83. ICE Portal previously competed with VFML in distributing digital photographs and rich content through the Global Distribution Systems. As a direct result of VFML's illegal tying arrangements as described above, ICE Portal and other competitors were foreclosed from distributing digital photographs and rich content through the Global Distribution Systems.

84. VFML's illegal tying arrangements have resulted in the actual and substantial reduction of competition in the Photo Distribution Market and the Rich Content Distribution Market.

85. VFML's illegal tying arrangements constitute contracts in restraint of trade in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1, and such illegal tying arrangements are per se illegal under the relevant case law.

86. As a direct and proximate result of VFML's contracts in restraint of trade, ICE Portal has been injured in business and property in an amount to be determined at trial.

87. As a direct and proximate result of VFML's contracts in restraint of trade, ICE Portal has suffered and is threatened with loss or damage to business and property for which monetary compensation alone is not an adequate remedy.

88. As a direct and proximate result of this VFML's contracts in restraint of trade, consumers have been deprived of the full benefits of competition in the relevant markets.

**COUNT V**
**Violation of Section 1 of the Sherman Antitrust Act**
**(Exclusive Dealing Agreements with Hotels)**

89. ICE Portal incorporates paragraphs 1 through 88 as though set forth fully herein.

90. VFML has coerced (by means of an illegal tying arrangement) hotels and hotel groups to enter into long-term exclusive dealing arrangements for the distribution of digital photographs and rich content through VFML. Such exclusive dealing agreements include, *inter alia*, the exclusive distribution agreement between VFML and IHG.

91. These exclusive dealing arrangements have had the purpose, effect, tendency and capacity to, among other things, foreclose a substantial number of actual and potential customers from distributing digital photographs or rich content through ICE Portal. Hotels and hotel groups that would like to distribute digital photographs and rich content to online travel agents through ICE Portal are precluded from doing so by virtue of their exclusive dealing arrangements with VFML.

92. The actual and probable effect of VFML's exclusive dealing arrangements has been to raise prices above the competitive level and substantially lessen competition in the Photo Distribution Market and the Rich Content Distribution Market. VFML possesses monopoly power in both markets and has used, and, continues to use, exclusive dealing arrangements to raise barriers to entry and foreclose actual and potential competition.

93. There is no legitimate business justification for VFML's exclusive dealing arrangements.

94. VFML's exclusive dealing arrangements constitute contracts in restraint of trade in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1.

95. As a direct and proximate result of VFML's contracts in restraint of trade, ICE Portal has been injured in business and property in an amount to be determined at trial.

96. As a direct and proximate result of VFML's contracts in restraint of trade, ICE Portal has suffered and is threatened with loss or damage to business and property for which monetary compensation alone is not an adequate remedy.

97. As a direct and proximate result of this VFML's contracts in restraint of trade, consumers have been deprived of the full benefits of competition in the relevant markets.

**COUNT VI**
**Violation of Section 1 of the Sherman Antitrust Act**
**(Illegal Tying Arrangements with Hotels)**

98. ICE Portal incorporates paragraphs 1 through 97 as though set forth fully herein.

99. By virtue of its acquisition of Leonardo, VFML possesses virtually complete monopoly power in the Photo Distribution Market. As a practical matter, each and every hotel that distributes photos to one or more online travel agents does so through VFML.

100. VFML has utilized its monopoly power in the Photo Distribution Market to coerce hotels and hotel groups, including IHG, to enter into unreasonable and anticompetitive tying arrangements in the form of exclusive distribution agreements.

101. Specifically, VFML has conditioned the new or continued distribution of digital photographs (the tying product) on exclusive distribution of rich content (the tied product) by VFML.

102. These illegal tying arrangements have had the purpose, effect, tendency and capacity to, among other things, foreclose a substantial number of actual and potential customers from distributing rich content through ICE Portal. Hotels and hotel groups that would like to distribute digital photographs through VFML and rich content through ICE Portal are precluded from doing so by virtue of their illegal tying arrangements with VFML.

103. VFML's illegal tying arrangements have resulted in the actual and substantial reduction of competition in the Rich Content Distribution Market.

104. VFML's illegal tying arrangements constitute contracts in restraint of trade in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1, and such illegal tying arrangements are per se illegal under the relevant case law.

105. As a direct and proximate result of VFML's contracts in restraint of trade, ICE Portal has been injured in business and property in an amount to be determined at trial.

14

106.    As a direct and proximate result of VFML's contracts in restraint of trade, ICE Portal has suffered and is threatened with loss or damage to business and property for which monetary compensation alone is not an adequate remedy.

107.    As a direct and proximate result of this VFML's contracts in restraint of trade, consumers have been deprived of the full benefits of competition in the relevant markets.

## COUNT VII
### Violations of the Florida Antitrust Act

108.    Plaintiff incorporates paragraphs 1 through 107 as though set forth fully herein.

109.    Throughout the relevant time period, VFML possessed the ability to affect price and output in the Technology Platform Market, the Photo Distribution Market, and the Rich Content Distribution Market.

110.    By its virtue of the exclusive dealing and illegal tying arrangements described above, VFML has attempted to and has excluded ICE Portal from the Technology Platform Market, the Photo Distribution Market, and the Rich Content Distribution Market.

111.    By means of such exclusion, VFML intended to affect and has affected the price and supply of services in the Technology Platform Market, the Photo Distribution Market, and the Rich Content Distribution Market.

112.    Wherefore, VFML has violated the Florida Antitrust Act of 1980, Florida Statutes, § 542.15 *et seq.*

113.    As a direct and proximate result of VFML's violations of the Florida Antitrust Act of 1980, ICE Portal has been injured in business and property in an amount to be determined at trial.

114.    As a direct and proximate result of VFML's violations of the Florida Antitrust Act of 1980, ICE Portal has suffered and is threatened with loss or damage to business and property for which monetary compensation alone is not an adequate remedy.

115.    As a direct and proximate result of this VFML's violations of the Florida Antitrust Act of 1980, consumers have been deprived of the full benefits of competition in the relevant markets.

### PRAYER FOR RELIEF

**WHEREFORE**, ICE Portal prays that the Court enter judgment in its favor as follows:

1. Declaring that the VFML has violated and is in violation of Section 1 and Section 2 of the Sherman Antitrust Act, including per se violations of Section 1 based upon illegal tying arrangements;

2. Declaring that VFML has violated and is in violation of the Florida Antitrust Act, including per se violations of Chapter 542.18, Florida Statutes, based upon illegal tying arrangements;

3. Awarding threefold the damages for Claims I, II, III, IV, V, and VI, in an amount in excess of $34.5 million, the final award to be determined at trial, which have been sustained by ICE Portal as a result of VFML's violations of the Sherman Antitrust Act, pursuant to 15 U.S.C. § 15;

4. Awarding threefold the damages for Claim VII, in an amount in excess of $34.5 million, the final award to be determined at trial, which have been sustained by ICE Portal as a result of VFML's violations of the Florida Antitrust Act of 1980, pursuant to Florida Statutes § 542.22;

5. Ordering appropriate injunctive relief, including the following:

(a)    The divestiture of assets that VFML acquired from Leonardo in violation of Section 2 of the Sherman Act, as described herein;

(b)    The invalidation of all VFML contracts that support the exclusive dealing arrangements and illegal tying arrangements detailed herein; and

(c)    The immediate cessation of any exclusive dealing arrangement or illegal tying arrangement entered into by VFML that is not detailed herein.

6. Awarding ICE Portal the costs, expenses, and reasonable attorneys' fees and experts' fees for bringing and prosecuting this action; and

7. Awarding ICE Portal such other and further relief as the Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, ICE Portal hereby demands a trial by jury on all issues so triable.

Dated this 9th day of September, 2009.

Respectfully submitted,

_____

Patrick J. O'Connor
Florida Bar No. 0715778

**HARPER MEYER PEREZ HAGEN**
**O'CONNOR & ALBERT LLP**
701 Brickell Avenue, Suite 1400
Miami, Florida 33131
Telephone: +1 (305) 577-3443
Facsimile: +1 (305) 577-9921
pjoconnor@harpermeyer.com

Counsel for ICE Portal, Inc.

*JS 44 (Rev. 2/08)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)    **NOTICE: Attorneys MUST Indicate All Re-filed Cases Below.**

## I. (a) PLAINTIFFS
ICE Portal, Inc.

**09-61424**

**DEFENDANTS**
VFM Leonardo, Inc.

(b) County of Residence of First Listed Plaintiff   Broward
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant   Foreign
(IN U.S. PLAINTIFF CASES ONLY)

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT
LAND INVOLVED.

(c) Attorney's (Firm Name, Address, and Telephone Number)

CIV-ZLOCH

Harper Meyer Perez Hagen O'Connor & Albert LLP
701 Brickell Avenue, Suite 1400
Miami, Florida 33131          Phone: (305) 577-3443
/ROSENBAUM

Attorneys (If Known)

FILED by ____ D.C.

SEP 0 9 2009

STEVEN M. LARIMORE
CLERK U.S. DIST. CT.
S. D. of FLA. - MIAMI

(d) Check County Where Action Arose:  ☐ MIAMI- DADE  ☐ MONROE  ☑ BROWARD  ☐ PALM BEACH  ☐ MARTIN  ☐ ST. LUCIE  ☐ INDIAN RIVER  ☐ OKEECHOBEE  ☐ HIGHLANDS

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

☐ 1  U.S. Government Plaintiff
☑ 3  Federal Question (U.S. Government Not a Party)
☐ 2  U.S. Government Defendant
☐ 4  Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff
(For Diversity Cases Only)                                       and One Box for Defendant)

|                                        | PTF | DEF |                                                          | PTF | DEF |
|----------------------------------------|-----|-----|----------------------------------------------------------|-----|-----|
| Citizen of This State                  | ☑ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State               | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☑ 3 | Foreign Nation                                           | ☐ 6 | ☐ 6 |

09cv61424-ZLOCH / ROSENBAUM

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|----------|-------|--|--------------------|------------|----------------|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - Med. Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☒ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury - Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | **PERSONAL PROPERTY** | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| | | ☐ 371 Truth in Lending | ☐ 690 Other | | ☐ 490 Cable/Sat TV |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 380 Other Personal Property Damage | **LABOR** | **SOCIAL SECURITY** | ☐ 810 Selective Service |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/Exchange |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 195 Contract Product Liability | | | ☐ 730 Labor/Mgmt.Reporting & Disclosure Act | ☐ 863 DIWC/DIWW (405(g)) | |
| ☐ 196 Franchise | | | | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 790 Other Labor Litigation | **FEDERAL TAX SUITS** | ☐ 892 Economic Stabilization Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | **Habeas Corpus:** | ☐ 791 Empl. Ret. Inc. Security Act | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 893 Environmental Matters |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | ☐ 530 General | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 894 Energy Allocation Act |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | **IMMIGRATION** | | ☐ 895 Freedom of Information Act |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities Employment | ☐ 540 Mandamus & Other | ☐ 462 Naturalization Application | | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities Other | ☐ 550 Civil Rights | ☐ 463 Habeas Corpus-Alien Detainee | | |
| | ☐ 440 Other Civil Rights | ☐ 555 Prison Condition | ☐ 465 Other Immigration Actions | | ☐ 950 Constitutionality of State Statutes |

## V. ORIGIN (Place an "X" in One Box Only)

☑ 1 Original Proceeding
☐ 2 Removed from State Court
☐ 3 Re-filed- (see VI below)
☐ 4 Reinstated or Reopened
☐ 5 Transferred from another district (specify)
☐ 6 Multidistrict Litigation
☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. RELATED/RE-FILED CASE(S).
(See instructions second page):

a) Re-filed Case ☐ YES ☐ NO          b) Related Cases ☑ YES ☐ NO

JUDGE Cecilia M. Altonaga          DOCKET NUMBER 09-60230-CIV

## VII. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing and Write a Brief Statement of Cause (**Do not cite jurisdictional statutes unless diversity**):

15 U.S.C. Sections 1 and 2 (violations of the Sherman Antitrust Act)

LENGTH OF TRIAL via _14_ days estimated (for both sides to try entire case)

## VIII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

**DEMAND $** 34,500,000.00

CHECK YES only if demanded in complaint:
**JURY DEMAND:** ☑ Yes ☐ No

ABOVE INFORMATION IS TRUE & CORRECT TO THE BEST OF MY KNOWLEDGE

SIGNATURE OF ATTORNEY OF RECORD

DATE
September 9, 2009

FOR OFFICE USE ONLY
AMOUNT $350          RECEIPT # 100806P5
09/09/09